In re **BENNETT PAPER CORPORATION, Debtor.**

**BENNETT PAPER CORPORATION, Plaintiff,**

v.

Gerald **McGRAW, an individual, Jefferson Smurfit Corporation, and Alton Packaging Corporation, Defendants.**

Bankruptcy No. 85–00782(2).
Adv. No. 86–0013(2).

United States Bankruptcy Court,
E.D. Missouri, E.D.

Sept. 16, 1986.

See also, Bkrtcy., 63 B.R. 8, Bkrtcy., 68 B.R. 518.

Barry S. Schermer, Clayton, Mo., Joel Pelofsky, Kansas City, Mo., for debtor.

Donald H. Whaley, Terry J. Galganski, Clayton, Mo., for plaintiff.

Jordan B. Cherrick, St. Louis, Mo., for Jefferson and Alton.

Gordon F. Webb, St. Louis, Mo., for McGraw.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

On January 10, 1986, Bennett Paper Corporation ("Bennett"), Debtor, filed its Petition For Injunctive Relief and Damages against Defendants Gerald McGraw ("McGraw"), Jefferson Smurfit Corporation ("Jefferson") and Alton Packaging Corporation ("Alton"). Initially, Bennett's Complaint consisted of three counts, the first and second of which sounded in contract and requested injunctive relief as well as money damages. On January 30, 1986, Jefferson and Alton moved to dismiss Counts I and II and McGraw moved to dismiss the entire Complaint. On February 11, 1986, the Court held a preliminary hearing on the matter, at which time all parties appeared and filed briefs in support of their respective positions. Defendants again moved for a dismissal of all or some counts of Bennett's Complaint and Bennett requested leave to file an additional brief in support of its claims for relief plead in Counts I and II. Based upon that record, on February 18, 1986, the Court determined that Bennett was not entitled to the injunctive relief it had requested in Counts I and II, but granted Bennett leave to file an additional brief in suport of its claims for relief plead in those counts. On February 26, 1986, Bennett filed its brief opposing Defendants' motions to dismiss Counts I and II and on February 28, 1986, Jefferson and Alton replied by letter addressed to the Court. On September 8, 1986, by leave of Court, Bennett amended its Complaint by adding an additional count against McGraw. Bennett, however, made no substantive changes in Counts I and II. Upon consideration of the parties' briefs, the record as a whole and for the reasons set forth below, the Court will this date enter an order dismissing Counts I and II of Bennett's Amended Complaint and set a pretrial conference on the remaining counts.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "related proceeding" which the Court may hear and determine by reason of the consent of all parties to the proceeding.

### DEFENDANTS' MOTIONS TO DISMISS

Rule 12(b)(6) F.R.Civ.P., applicable to this proceeding by reason of Bankruptcy Rule 7012(b), provides that if matters outside the pleadings are presented on a motion to dismiss, the court shall treat the motion as one for summary judgment under Rule 56 F.R.Civ.P. (Bankruptcy Rule 7056). Since numerous documents as well as depositions have been presented to the Court, the Court will treat Defendants' motions to dismiss as ones for summary judgment.

In determining Defendants' motions, the Court views the facts in the light most favorable to Bennett and assumes the allegations of Bennett's Amended Complaint to be true. *Elbe v. Yankton Independent School Dist. No. 1,* 714 F.2d 848, 850 (8th Cir.1983).

Taken in this light, the material facts are as follows. Since 1962, Bennett has manufactured, distributed, imported and exported paper products. In June, 1978, Bennett purchased the corporate stock of American Label Corporation and Eagle Container Corporation, each of which was 50 percent owned by Defendant McGraw. In conjunction with its purchase of McGraw's stock in these two corporations, Bennett entered into an employment agreement with McGraw which commenced on June 1, 1978, and ended on May 30, 1981. At the same time and in conjunction with his employment, McGraw also agreed that

"in the event his employment with American Label Corporation is terminated, whether by American Label Corporation, Bennett Paper Corporation, or by Employee, that he will not, during the year immediately following such termination, either directly or indirectly as a sole proprietor, partner, or employee of a partnership or corporation, call or solicit any of the customers of American Label Corporation, or Bennett Paper Corporation, which he serviced or called upon while an Employee of American Label Corporation or Bennett Paper Corporation."

Although McGraw executed no other employment agreements with Bennett, he continued to work for Bennett until it terminated him on April 19, 1985. Since June 19, 1985, McGraw has been employed by Defendant Alton, a subsidiary of Defendant Jefferson.

In Count I, Bennett alleges that since April 19, 1985, McGraw in numerous ways has breached his agreement with Bennett, and that as a result, Bennett has been damaged. In Count II, Bennett alleges that in addition to McGraw, Defendants Alton and Jefferson have also damaged Bennett through a conspiracy to breach McGraw's agreement with Bennett.

Defendants, on the other hand, respond that McGraw's contract with Bennett expired on May 30, 1981, and that, accordingly, McGraw's non-competition covenant ceased to be of effect long before the complained of allegations. Since there was no contract which Defendants could breach, Defendants conclude that, as a matter of law, Counts I and II which sound in contract must be dismissed.

In support of their argument, Defendants cite *Financial Guardian, Inc. v. Kutter*, 630 S.W.2d 197 (Mo.App.1982). In that case Kutter entered an employment contract with Financial Guardian on July 1, 1975.

"This contract contained a covenant not to compete for three years after leaving the employ of Financial Guardian. Financial Guardian's petition, filed February 5, 1981, sought injunctive relief, money damages and an accounting for monies received by Kutter as a result of an alleged breach of the covenant. Financial Guardian's petition incorporated the employment contract, asserted that the contract was not renewed on July 1, 1979, that Kutter continued in the employ of Financial Guardian until May 31, 1980, and that Kutter had become associated with a competing insurance company." *Id.* at 197–98.

The trial court sustained Kutter's motion to dismiss and the appellate court affirmed

"because the employment contract containing the restrictive covenant was admittedly terminated before the restriction became operative ... Under the unambiguous terms of the contract, the covenant would come into play only if Kutter left Financial Guardian's employ during the contract term. The contract had to have been in effect at the end of Kutter's employment for the covenant to come into play. Since it terminated the contract, yet allowed Kutter to stay in its employ for eleven months after the termination, Financial Guardian cannot now seek to have the covenant enforced." *Id.* at 198.

The Court finds and concludes that McGraw's covenant not to compete was part and parcel of his employment agreement with Bennett. Like Kutter, McGraw continued his employment past the expiration of his employment agreement and was only thereafter terminated by his employer.

As in Kutter's case, upon the expiration of McGraw's employment agreement, McGraw's covenant not to compete was of no further effect. Since the alleged breaches averred to by Bennett in Counts I and II of its Complaint relate to a covenant not to compete which was without any legal effect, they are of no legal consequence. Counts I and II, therefore, being deficient as a matter of law, by separate order they will this date be dismissed.